**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **CONNECTICUT RIVER WATERSHED** | ) | Civil Action No. |
| **COUNCIL,** a non-profit organization | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT FOR DECLARATORY** |
| vs. | ) | **AND INJUNCTIVE RELIEF AND** |
| | ) | **CIVIL PENALTIES** |
| **CHANG & SONS ENTERPRISE, INC.,** | ) | |
| **CHANG FARMS**, and **SIDNEY CHANG**, | ) | (Federal Water Pollution Control Act, |
| | ) | 33 U.S.C. § 1251 et seq) |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

1.      Connecticut River Watershed Council ("CRWC") brings this citizen suit under section 505(a)(1) of the Clean Water Act, 33 U.S.C. §1365(a)(1), against Chang & Sons Enterprises, Inc., Chang Farms and Sidney Chang, (collectively "Chang Farms" or "Defendants") for discharges of wastewater to the Connecticut River in violation of Chang Farms' National Pollutant Discharge Elimination System ("NPDES") permit. These violations have occurred and are occurring at the Defendants' facility located at 301 River Road, Whately, MA 01093 ("Facility").

2.      The Connecticut River is New England's longest river, flowing approximately 410 miles from its headwaters in Quebec, Canada and emptying into Long Island Sound near Old Lyme, Connecticut.  The River runs through four New England states and supplies 70% of all fresh water entering Long Island Sound.

1

3.      The Facility, which is located adjacent to the Connecticut River and one of its tributaries, Sugarloaf Brook, has been subject to two Clean Water Act permits during the time period relevant to this Complaint, both of which bear the NPDES Permit No. MA00040207. The United States Environmental Protection Agency ("EPA") and the Massachusetts Department of Environmental Protection ("MassDEP") jointly issued the permits to Chang Farms. From May 2010 through February 2014, the Facility was subject to a NPDES Permit that was issued on September 29, 2006 and became effective on December 1, 2006 (hereinafter "the 2006 Permit"). From March 2014 through the present, the Facility has been subject to a NPDES Permit that was issued on December 20, 2013 and became effective on March 1, 2014 (hereinafter "the 2014 Permit"). Unless specifically referred to by their years of becoming effective, both permits will be referred to hereinafter collectively as "CWA Permit."  Both permits are attached as **Exhibit 1**, and incorporated by reference.

4.      Chang Farms has violated, and continues to violate, its CWA Permit by discharging wastewater containing the following pollutants in excess of or outside the Permit's specific numeric limits:  total suspended solids ("TSS"), pH, and biochemical oxygen demand ("BOD"). Chang Farms also has violated and continues to violate its Permit by discharging wastewater that fails the Whole Effluent Toxicity ("WET") test, designed to measure the acute toxicity of the Facility's discharge.

5.      Specifically, in the past five years alone, Chang Farms has violated and/or exceeded its express numeric permit limitations more than 330 times, based on the Facility's self-reported sampling data. Likewise, based on the Facility's own sampling, in the 62 months between May 2010 and June 2015, Chang Farms has violated numeric effluent limitations in its CWA Permit in 56 of those months, or 90% of the time.

6.      Chang Farms has violated, and continues to violate, the CWA Permit's requirements for the monitoring and reporting discharges based on failures to sample and/or report results of samples for discharges occurring from May 2010 through the filing of this Complaint. The monitoring and reporting violations are, at a minimum, for the following parameters: TSS, BOD, flow, nitrogen (total kjeldahl nitrogen and nitrite + nitrate nitrogen), and total phosphorus.

7.      Chang Farms has violated, and continues to violate, its CWA Permit requirement to operate and maintain all pollution treatment and control facilities and systems necessary for compliance with the Permit's effluent limits. The Facility regularly exceeds allowable effluent limits, regularly violates monitoring and reporting requirements, and also has failed the test designed to measure the acute toxicity of its discharge at least 30% of the time in the past five years, indicating that Chang Farms does not sufficiently operate and maintain all of its pollution treatment and control facilities and systems.

8.      The discharge, monitoring, reporting, and toxicity violations described above are based on Chang Farms' self-reported data in the Facility's Discharge Monitoring Reports ("DMRs") between May 2010 and June 2015, which is the last data available to Plaintiff at the time of the filing of this Complaint. This lawsuit also includes violations that occurred on days in between those required sampling events on which discharges also occurred from the Facility. This also lawsuit encompasses any future, similar CWA Permit violations, which occur as a result of discharges after the filing of this Complaint or which are revealed during the course of this litigation.

9.      Chang Farms' CWA Permit requires that Chang Farms "implement, maintain, and update as necessary, a Best Management Practices ("BMP") Plan designed to reduce, or prevent

the discharge of pollutants" to the Connecticut River. The Permit requires the Facility's BMP Plan to contain several components to accomplish this goal. Chang Farms' regular exceedances of allowable effluent limits, regular reporting, sampling and monitoring deficiencies, and failed acute toxicity tests demonstrate the Facility is not in compliance with these requirements.

10.     Chang Farms' ongoing violations of the Clean Water Act have caused, and unless abated, will continue to cause harm to CRWC and its members who use and enjoy the Connecticut River in areas near and downstream of where the violations are occurring.

11.     CRWC seeks injunctive and declaratory relief under Section 505(a) and (d) of the Clean Water Act, 33 U.S.C §§ 1365(a) and (d), to prevent further violations and harm to the CRWC's members and the Connecticut River. Additionally, CRWC seeks an award of costs of litigation, including reasonable attorney and expert witness fees, pursuant to section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and any other remedy this Court deems proper.

## JURISDICTION AND VENUE

12.     Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). An actual, justiciable controversy exists between CRWC and Chang Farms. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. §§ 1319(d), 1365(a), (d).

13.     Pursuant to Section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A), CRWC notified Chang Farms of its violations of the Act and of CRWC's intent to sue under the Act by letter dated and postmarked June 3, 2015 ("Notice of Intent" or "NOI"). A copy of the Notice of Intent is attached to this Complaint as **Exhibit 2**. The NOI, including Table 1: Reported Effluent Violations, is incorporated herein by reference.  CRWC also notified the Administrator of the United States EPA, the Regional Administrator of EPA, and the

Commissioner of MassDEP of its intent to sue Chang Farms by mailing copies of the NOI to these officials on June 3, 2015.

14.    More than 60 days have passed since CRWC sent the NOI on June 3, 2015.

15.    Venue lies in the District of Massachusetts, Western Division, pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this claim occurred at the Facility, located in Whately, MA, in Franklin County, within the Western Division of this judicial district.

## PARTIES

16.    Plaintiff CONNECTICUT RIVER WATERSHED COUNCIL is a 501(c)(3) non-profit organization, based in Greenfield, MA. CRWC was founded in 1952 and works to protect the Connecticut River watershed from source to sea.

17.    CRWC has members who live, work, and recreate in and around the Connecticut River near the Facility. These activities include volunteer programs such as river cleanups and water quality monitoring and sampling, as well as recreational activities, which include contact with the water, like boating, fishing, and swimming.

18.    CRWC has been active for nearly a decade in its efforts to protect its members' interests related to wastewater pollution from Defendants' Facility.  On September 21, 2006, CRWC submitted comments to EPA regarding Chang Farms' draft NPDES permit.  And on October 23, 2013, when EPA was considering renewing Chang Farms' permit, CRWC again submitted comments to EPA. In its comments, CRWC urged EPA to implement stricter permit terms and conditions to protect the Connecticut River from the Facility's pollution discharges, as well as urged EPA to bring enforcement actions against Chang Farms for violations of its CWA Permit.

19.     Plaintiff's members who participate in activities near and downstream from the Facility are concerned about the harmful impacts of pollutant discharges contributing to degrading the water quality of the Connecticut River. CRWC members are particularly concerned about the discharges that exceed effluent limits in the Facility's CWA permit, which are set to protect water quality and ensure designated uses, including recreation and aquatic life habitat, of the River are maintained.  CRWC members also are concerned about data showing the Facility's discharges are failing acute toxicity tests.

20.     Plaintiff's members are concerned that Chang Farms' discharges detrimentally affect the water resources that Plaintiff's members use and enjoy, and the aquatic-dependent wildlife and ecosystems supported by the Connecticut River watershed.

21.     Based on these concerns, Plaintiff's members use and enjoyment of the areas near and downstream of the Facility's discharges have been, are being, and will continue to be diminished because of Chang Farms' Clean Water Act violations. Unless the requested relief is granted, Defendants' Clean Water Act violations will continue to injure Plaintiff's members.

22.     Defendant CHANG & SONS ENTERPRISES, INC. is the named entity on the Facility's 2014 CWA Permit. To the best of CRWC's knowledge, Chang & Sons Enterprises, Inc. owns and/or operates the Facility located at 301 River Road, Whately, MA 01093. The Facility engages in the agricultural production and distribution of bean sprouts from seed for the retail market.

23.     Defendant CHANG FARMS is the named entity on the Facility's 2006 CWA Permit. To the best of CRWC's knowledge, Chang Farms owns and/or operates the Facility located at 301 River Road, Whately, MA 01093.

24.     Defendant SIDNEY CHANG, is the vice-president of Chang & Sons Enterprises, Inc., and owns and/or operates the Facility located at 301 River Road, Whately, MA 01093. To the best of CRWC's knowledge, Sidney Chang has held this or some management position during the time of the violations alleged. Sidney Chang also is responsible for submitting the monthly, electronic DMRs, and thus is aware of the violations alleged here. To the best of CRWC's knowledge, Sidney Chang has the authority to install effective pollution controls and practices at the Facility to prevent future violations. As the responsible corporate representative, Sidney Chang is liable for the violations alleged in this Complaint.

## FEDERAL STATUTORY BACKGROUND

25.     Congress enacted the Clean Water Act to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." The Act establishes an "interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife." To these ends, Congress developed both water quality-based and technology-based approaches to regulate discharges of pollutants from point sources into waters of the United States.

26.     Section 301(a) of the Clean Water Act prohibits the point source discharge of pollutants to waters of the United States unless the discharge is in compliance with an NPDES permit issued pursuant to Section 402 of the Act.

27.     The NPDES permitting scheme is the primary mechanism for regulating discharges of pollutants. NPDES permits must include conditions that will ensure compliance with the Clean Water Act.

28.     Once regulated by an NPDES permit, a facility's discharges must strictly comply with all of the terms and conditions of that permit.

29.     EPA is the primary administrator of the Clean Water Act. Section 402 of the Act authorizes EPA to delegate its authority to states to implement and administer the Act; however, EPA has not authorized the Commonwealth of Massachusetts to implement and administer the NPDES permitting program in Massachusetts. Thus, EPA, in conjunction with the state, issues NPDES permits in Massachusetts.

## CLEAN WATER ACT ENFORCEMENT PROVISIONS

30.     Under Section 505(a) of the Clean Water Act, a citizen may commence an enforcement action against any person who is in violation of an "effluent standard or limitation." An effluent standard or limitation includes a Clean Water Act NPDES permit or condition thereof.

31.     Citizens are required to provide notice of any alleged violations 60 days prior to commencing suit. After 60 days have passed, citizens may bring an action in federal district court to enforce ongoing Clean Water Act violations.

32.     The citizen suit provision of the Clean Water Act grants jurisdiction to the United States District Courts to impose an injunction requiring compliance with the Act and to impose appropriate civil penalties for violations of the Act. Section 309(d) of the Act, provides for civil penalties of up to $37,500 per day per violation. Additionally, section 505(d) of the Act, grants jurisdiction to the District Court to award costs of litigation (including expert witness costs and reasonable attorneys' fees) to citizen plaintiffs.

///

## STATEMENT OF FACTS

**A. Background**

33.     Chang Farms produces and distributes sprouts from seed for the retail market. Raw materials used at the Facility include seeds, nutrient grown solution, disinfection chemicals, and packaging materials. The Facility generates wastewater from its operations as a result of, at a minimum, crop irrigation, crop washing, and washing and sanitation of equipment.

34.     The Facility is owned and/or operated by Defendants.

35.     The Facility discharges pollutants into the Connecticut River through one outfall, Serial Number 001, located at 42° 27' 44.60" N Latitude, and 72° 35' 18.70" W Longitude.

36.     The Facility discharges into Segment 34-04, as designated by the MassDEP, of the Connecticut River. MassDEP has designated this section of the river as a Class B freshwater body, meaning that the water is designated for fish habitat, other aquatic life, and wildlife, and for primary and secondary contact recreation.  Class B waters also shall have consistently good aesthetic value.

37.     Outfall 001 discharges into the Connecticut River downstream of the Sunderland Bridge, which contains a boat launch and fishing access point. This is a popular section of the river for canoeing, kayaking, and motor boating. In addition, swimming takes place off private land located along the river within the vicinity of the discharge.

38.     The Connecticut River provides habitat for many different fish and aquatic and aquatic-dependent species, including the shortnose sturgeon (*Acipenser brevirostrum*), which is listed as federally endangered under the Endangered Species Act and have been documented as occurring in the area near the Facility's discharge.

9

**B. Chang Farms' NPDES Permit**

39.     On September 29, 2006, EPA and MassDEP jointly issued a NPDES permit to Chang Farms (No. MA0040207) authorizing the Facility to discharge wastewater from Outfalls 001 and 002 into the Connecticut River and Sugarloaf Brook, respectively. Discharges into the Sugarloaf Brook, through Outfall 002, were discontinued in 2007 upon the completion and operation of Outfall 001. Prior to the issuance of the 2006 Permit, Chang Farms had been illegally discharging its wastewater into Sugarloaf Brook without a Clean Water Act permit.

40.     The Facility's 2006 NPDES permit included, among other conditions, numeric effluent limitations, monitoring and reporting requirements, acute toxicity testing requirements, the requirement to properly operate and maintain all pollution treatment and control systems at the Facility, and the requirement to implement BMPs to control pollution.

41.     On December 19, 2013, MassDEP issued an Administrative Consent Order with Penalty and Notice of Noncompliance to Chang & Son Enterprises, Inc. (hereinafter "2013 Consent Order"), for violations associated with Chang Farms' wastewater treatment facility that DEP discovered during an August 6, 2013 Compliance Evaluation Inspection.

42.     On December 20, 2013, EPA and MassDEP renewed Chang Farms' NPDES permit (also No. MA0040207). This renewed permit contains many of the same terms and conditions of the 2006 Permit. This permit was issued December 30, 2013, and became effective March 1, 2014.

43.     Chang Farms must submit monthly DMRs for the Facility's wastewater discharges to EPA no later than the 15th day of the month following the completed reporting period.

**C.  Clean Water Act Numeric Effluent and Reporting Violations**

   **1.  Numeric Effluent Violations**

44.     The Facility's history of exceeding numeric effluent limits is documented in the Facility's DMRs and related records filed with EPA. Specifically, discharges from the Facility have continued to violate the express numeric effluent limitations and other conditions contained in its NPDES Permit.

45.     Each time Chang Farms discharges effluents in excess of or outside its CWA Permit limitations represents a distinct violation of its Permit, and thus, a violation of Section 301(a) of the Clean Water Act, 33 U.S.C § 1311, and its implementing regulation, 40 C.F.R. § 122.41(a).  Each day Chang Farms operates its Facility in violation of a term or condition of its CWA Permit represents a day of violation pursuant to Section 309(d) of the CWA, 33 U.S.C. 1319(d).

46.     The Facility's DMRs only reflect violations for those days the Facility was required to sample.  It is likely, given the large number of violations during the time period covered by this Complaint, that additional discharges from the Facility also violated its CWA Permit.

*Total Suspended Solids Violations*

47.     Defendants have regularly violated and continue to violate the effluent limitations set forth in the NPDES Permit for TSS at Outfall 1. Specifically, Chang Farms has violated its TSS permit limits at least 40 times since May 2010. Thirty-eight of the Facility's reported TSS violations are set forth in Table 1 of the NOI.  The Facility had two additional reported TSS violations in May 2015 that are not reflected in the NOI.

48.     Total suspended solids include fine organic debris and other particulate matter. Higher concentrations of TSS can serve as carriers of toxics, which readily cling to suspended particles. TSS concentration also affects water clarity. Higher concentrations decrease the passage of light through water, thereby blocking light from reaching submerged vegetation, which reduces rates of photosynthesis. A reduced rate of photosynthesis causes less dissolved oxygen released into the water by plants. Further exacerbating the reduction of dissolved oxygen, lack of light causes submerged plants to die. As the plants decompose, the aerobic bacteria use oxygen, further reducing the amount of dissolved oxygen available for fish and other aquatic organisms. High TSS can also increase the surface water temperature because the suspended particles absorb heat from sunlight. This can cause dissolved oxygen levels to fall even further because warmer waters hold less dissolved oxygen.

49.     The decrease in water clarity caused by TSS can affect the ability of fish to see and catch food. Suspended sediment can also clog fish gills, reduce growth rates, decrease resistance to disease, and prevent egg and larval development. When suspended solids settle to the bottom of a water body, they can smother the eggs of fish and aquatic insects, as well as suffocate newly hatched insect larvae. Settling sediments can fill in spaces between rocks, which can destroy habitat for some aquatic organisms.

*pH Violations*

50.     Defendants have violated and continue to violate the pH parameter in their NPDES Permit. Specifically, based on review of Chang Farms' DMRs, 173 violations of the pH parameter occurred between May 2010 and the filing of this Complaint.

51.     pH is a term is used to indicate the degree of alkalinity or acidity of a solution ranked on a scale of 0 to 14, with pH 7 being neutral. When pH is below 7, the solution is acidic

and when the pH is above 7, the solution is alkaline, or commonly called "basic." pH affects many chemical and biological processes in the water. For example, different organisms flourish within different ranges of pH. Most aquatic animal species prefer a range of 6.5-8.0. pH outside this range reduces the diversity in the stream because it stresses the physiological systems of most organisms and can reduce reproduction.  Massachusetts Surface Water Quality Standards set forth in 314 CMR 4.05(b)(3) states that Class B waters shall be in the range of 6.5 through 8.3 standard units; the Permit sets this same effluent limit.  In some cases, Chang Farms violated the permit by reporting the pH of its effluent as less than 6.5, and other times pH exceeded 8.3.

*Biochemical Oxygen Demand Violations*

52.     Defendants have violated and continue to violate the numeric effluent limit set for BOD in their NPDES Permit.  Specifically, the Facility has exceeded its BOD limits at least 49 times since May 2010.

53.     Biochemical Oxygen Demand measures the amount of oxygen consumed by microorganisms in decomposing organic matter in a water body. BOD directly affects the amount of dissolved oxygen in rivers and streams. The greater the BOD, the more rapidly oxygen is depleted in the stream because when large quantities of organic waste exist in a water body, a large number of aerobic microorganisms will be present to decompose the waste. When this happens, the demand for oxygen will be high, which means less oxygen is available to higher forms of aquatic life, like fish, causing them to become stressed, suffocate, and die. The result is life in the aquatic ecosystem is limited to species that tolerate high organic content and low oxygen levels.

*Acute Toxicity Violations*

54.     Chang Farms' CWA Permit requires biannual Whole Effluent Toxicity ("WET") testing to determine the acute toxicity of the Facility's wastewater discharges.  WET testing is conducted to determine whether certain effluents are discharged in a combination that produces a toxic amount of pollutants in the receiving water.

55.     Out of the nine required WET tests conducted at the Facility between June 2010 and the present, Chang Farms failed three of them for acute toxicity.

**2.  Reporting and/or Monitoring Violations**

56.     Chang Farms has failed and is continuing to fail to comply with monitoring and reporting requirements of its NPDES permit. Values reported as "No Value" or "NODI-E," which stands for analysis not conducted, indicate monitoring and reporting violations. Defendants provide no explanation within the DMRs submitted for the failure to conduct the required monitoring and/or report the required analyses.

57.     Chang Farms violated the monitoring or reporting requirement for TSS at least 11 times, as set forth in Table 1 of the NOI. Defendants provide no explanation for these 11 violations.

58.     Chang Farms violated the monitoring or reporting requirement for BOD at least 10 times. These 10 violations resulted from either not conducting the required analysis, reporting no value, or failing to conduct the required frequency of sampling.

59.     Chang Farms failed to report a value for flow at least 3 times. Defendants provide no explanation for these three violations.

60.     Chang Farms also failed to monitor and report sample results for nitrogen (TNK and nitrite + nitrate nitrogen) and total phosphorus at Outfall 1. Defendants' have failed to conduct the required analyses for these pollutants at least twice. For both instances, the DMRs

reported value states "NODI-E" and provide no explanation for the Facility's failure to conduct and/or report the required sampling.

61.     In addition, there are numerous instances when Chang Farms' monthly average for certain parameters is exactly the same as the daily maximum sample result, which may indicate that only one sample was taken for the month when the Permit required multiple samples.

62.     In total, Chang Farms failed to adequately monitor and/or report its discharges at least 26 times since May 2010.  In addition, Defendants failed to submit its monthly DMRs on time to EPA for several months in 2014.  The monitoring and reporting violations by Chang Farms are of a continuing nature. Until the Facility begins to appropriately monitor, sample and report its sample results from its discharges, these violations will continue.

**D.  Failure to Properly Operate and Maintain**

63.     Chang Farms' CWA Permit requires that Chang Farms properly operate and maintain all pollution treatment and control facilities and systems that are necessary to comply with the effluent limits in the Permit. The permit mandates Chang Farms shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit and with the requirements of storm water pollution prevention plans.

64.     The fact that the Facility continues to regularly exceed allowable effluent limits demonstrates that Chang Farms is not in compliance with this requirement of the permit.  In addition, the fact that Chang Farms has failed the test designed to measure the acute toxicity of its discharge at least 30% of the time in the past five years is another indication that it is not properly operating and maintaining all of its pollution treatment and control facilities and

systems. Chang Farms' monitoring and reporting violations also demonstrate Defendants are not maintaining the systems necessary to achieve compliance with their CWA Permit.

65.     Chang Farms' CWA Permit requires that Chang Farms follow proper laboratory protocol so that the data presented in the DMR represent the levels of pollution actually present in the water discharging to the Connecticut River. The permit specifies "[p]roper operation and maintenance also includes adequate laboratory controls and appropriate quality assurance procedures."

66.     The violation of this permit condition is ongoing.  Each day that Chang Farms has failed and continues to fail to properly operate and maintain all pollution treatment and control facilities and systems at the Facility is a violation of its CWA Permit.

**E.  Failure to Implement, Maintain and Update Best Management Practices**

67.     Chang Farms' CWA permit requires that Chang Farms "implement, maintain, and update as necessary, a BMP Plan designed to reduce, or prevent the discharge of pollutants" to the Connecticut River.  The Permit requires the Facility's BMP Plan to contain several components that are explicitly set forth.

68.     The fact that the Facility continues to regularly exceed allowable numeric effluent limits and fail acute toxicity tests demonstrates that Chang Farms is not in compliance with this requirement of the permit.

69.     The violation of this permit condition is ongoing.  Each day that Chang Farms has failed and continues to fail to implement, maintain and update the Facility's BMP Plan is a violation of Defendants' CWA Permit.

**FIRST CLAIM FOR RELIEF**

**Violations of Numeric Effluent Limitations**

**(Violations of 33 U.S.C. Sections 1311(a), 1342)**

70.     Plaintiff incorporates and re-alleges all preceding paragraphs.

71.     Defendants' exceedances of the pollutant effluent limits set within its NPDES

Permit constitute violations of Chang Farms' NPDES Permit, as well as sections 301(a) and 402

of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342, and regulations implementing the Clean

Water Act at 40 C.F.R. § 122.41(a).

72.     These violations include, but are not limited to, self-reported exceedences of the

NPDES Permit's numeric effluent limits for TSS, pH, and BOD; and violations of acute toxicity

limits set forth in the Permit.

73.     These violations also include violations that occurred as a result of discharges

from the Facility on days when Chang Farms was not required by its Permit to collect a sample.

74.     As defined by the Clean Water Act, Defendants are "persons" responsible for

discharging "pollutants" from a "point source" into the "waters of the United States" in violation

of the "effluent limitations" contained in the applicable NPDES Permit. 33 U.S.C. § 1362.

75.     Each day of violation constitutes a separate and distinct violation under the Clean

Water Act.

76.     Defendants' violations have been occurring consistently since at least May 2010

to the present. Accordingly, these violations are ongoing and are reasonably likely to recur

absent redress from this Court.

## SECOND CLAIM FOR RELIEF

### Violations of Monitoring and Reporting Requirements

### (Violations of 33 U.S.C. Sections 1311(a), 1342)

77.      Plaintiff incorporates and re-alleges all preceding paragraphs.

78.      Defendants have exhibited a pattern of failing to fully comply with monitoring

and reporting requirements set in its NPDES Permit. Defendants, at a minimum, have failed to

report values or to perform the required analysis for TSS, BOD, flow, nitrogen, and phosphorus.

*See* Ex. 2, Table 1. Defendants also failed to submit their DMRs on time to EPA for several

months during 2014.

79.      These failures are violations of the NPDES Permit and sections 301(a) and 402 of

the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, and regulations implementing the Clean

Water Act at 40 C.F.R. § 122.41(a).

80.      Each day of violation constitutes a separate and distinct violation under the Clean

Water Act.

81.      These violations are ongoing and there is a reasonable likelihood they will recur

absent redress from this Court.

## THIRD CLAIM FOR RELIEF

### Violation of the Requirement to Properly Operate and Maintain Pollution Controls

### (Violations of 33 U.S.C. Sections 1311(a), 1342)

82.      Plaintiff incorporates and re-alleges all preceding paragraphs.

83.      Defendants repeated violations of NPDES Permit effluent limits, violations of

reporting, monitoring and sampling requirements, and failures of acute toxicity tests demonstrate

that Defendants have failed to properly operate and maintain all pollution treatment and control facilities and systems necessary for compliance with its NPDES Permit at the Facility.

84.     These failures are NPDES Permit violations and are in violation of 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1342, and regulations implementing the Clean Water Act at 40 C.F.R. § 122.41(a).

85.     Each day of violation constitutes a separate and distinct violation under the Clean Water Act.

86.     These violations are ongoing and there is a reasonable likelihood they will recur absent redress from this Court.

**FOURTH CLAIM FOR RELIEF**

**Failure to Implement, Maintain, and Update Best Management Practices (BMPs)**

**(Violations of 33 U.S.C. Sections 1311(a), 1342)**

87.     Plaintiff incorporates and re-alleges all preceding paragraphs.

88.     Defendants have failed to implement, maintain, and update BMPs and its BMP Plan as required for reducing or preventing discharge of excess pollutants into the Connecticut River.

89.     Defendants' failure to create, implement and update an adequate BMP Plan is evident by the Facility's continuing to regularly exceed allowable numeric effluent limits and repeated acute toxicity test failures.

90.     Each day of violation constitutes a separate and distinct violation of the NPDES Permit and the Clean Water Act.

91.     These violations are ongoing and there is a reasonable likelihood they will recur absent redress from this Court.

**RELIEF REQUESTED**

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

A.     Declare that Defendants have violated and are continuing to violate the Facility's NPDES Permit and Sections 301 and 402 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1342, and 40 C.F.R. § 122.41(a), since at least May 2010;

B.     Issue an injunction ordering Defendants to stop discharging polluted wastewater into the Connecticut River that violates the Facility's NPDES Permit and the Clean Water Act;

C.     Issue an injunction ordering Defendants to come into compliance with the terms and conditions of its NPDES Permit that require the Facility (1) to properly operate and maintain all pollution treatment and control facilities and systems necessary for compliance with its NPDES Permit; (2) to implement, maintain, and update BMPs as required for reducing or preventing discharge of excess pollutants into the Connecticut River; and (3) to monitor, sample, record, and report data regarding its wastewater discharges as set forth in the Permit.

D.     Enter a money judgment imposing appropriate civil penalties against Defendants up to a maximum amount of $37,500 per day per violation for all violations of the Clean Water Act on or after May 2010 pursuant to Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. § 1319(d), and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. Part 19;

E.     Retain jurisdiction over this matter until such time as Defendants have come into compliance with the requirements of the Clean Water Act and fully complied with any remedial orders of this Court;

      F.      Issue an order awarding Plaintiff its litigation expenses, including reasonable attorney fees, costs, and expert witness fees, as authorized by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d); and

      G.      Award such other relief as this Court deems appropriate.

DATED this 20th day of August 2015.

Respectfully submitted,

_____

Kevin M. Cassidy (MA BBO #681301)
Email: cassidy@lclark.edu
Earthrise Law Center
Lewis & Clark Law School
P.O. Box 445
Norwell, MA 02061
Tel: (781) 659-1696

Attorney for Plaintiff
Connecticut River Watershed Council

**EXHIBITS**

Exhibit 1 – Defendants' 2006 and 2014 NPDES Permits.

Exhibit 2 – Plaintiff's Notice of Intent to Sue Letter dated June 3, 2015.